**UNITED STATES DISTRICT COURT**
**THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Court No. |
| | ) |
| $7,500.00 IN U.S. CURRENCY | ) |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Now comes the plaintiff, United States of America, by and through its attorney, Krista Consiglio Frith, Assistant United States Attorney, and brings this Complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought to forfeit and condemn $7,500.00 in U.S. Currency to the use and benefit of the United States, pursuant to 21 U.S.C. § 881, for violations of 21 U.S.C. §§ 841 and 846.

### THE DEFENDANTS *IN REM*

2. The defendant property consists of the following property:

(a) Approximately $7,500.00 in U.S. Currency that was seized from Teresa Gail Bickley on April 15, 2019, at East Main Street, Marion, Virginia, and is presently in the custody of the United States Marshals Service at the Federal Reserve Bank.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

1

5. Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1) because the acts giving rise to this forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395 because the property is located in this district.

6. Upon the filing of this Complaint, the plaintiff requests that the Clerk of Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## BASIS FOR FORFEITURE

7. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as property that is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and 846 and/or pursuant to 21 U.S.C. § 881(a), constitutes or is derived from proceeds traceable to a violation thereof.

## FACTS

8. The facts supporting this Complaint are stated in the attached Declaration of Special Agent Christopher A. Mueller, Drug Enforcement Administration, and are incorporated by reference herein.

WHEREFORE, the United States of America respectfully requests that the Clerk of Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule G(3)(b); that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

2

THOMAS T. CULLEN

United States Attorney

s/Krista Consiglio Frith
Assistant United States Attorney
Virginia State Bar No. 89088
310 First Street, S.W., Room 906
Roanoke, VA 24011
Phone: (540)857-2250
Fax: (540)857-2614
krista.frith@usdoj.gov

## VERIFICATION

I am a Special Agent of the Drug Enforcement Administration, and one of the agents

assigned the responsibility for the above-captioned matter. I have read the contents of the

foregoing Complaint for Forfeiture, and the statements contained therein are true to the best of

my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of September, 2019

Christopher A. Mueller
Special Agent, Drug Enforcement Administration

3

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$7,500.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Smyth County, Virginia,
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Krista Consiglio Frith, AUSA
310 First Street, S.W. Room 906
Roanoke, VA 24011, 540-857-2250

Attorneys *(If Known)*
Christopher Johnson, Esq.
161 East Main Street
Abingdon, VA 24210

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from Another District *(specify)*
☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881
Brief description of cause:
Civil Forfeiture of Currency

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   09/19/2019

SIGNATURE OF ATTORNEY OF RECORD
s/Krista Consiglio Frith

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Case No. |
| | : | |
| $7500.00 IN U.S. CURRENCY | : | |
| Defendant. | | |

## AFFIDAVIT IN SUPPORT OF FORFEITURE IN REM

I, Christopher A. Mueller, United States Department of Justice, Drug Enforcement Administration, being first duly sworn, hereby depose and state as follows:

## BACKGROUND AND EXPERIENCE

1. I am an investigative law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516 and Title 21 United States Code, Section 878.

2. I am employed as a Special Agent (SA) by the Drug Enforcement Administration (DEA), United States Department of Justice, and I have been employed in this capacity since 1998. I am currently assigned to the DEA Bristol, Virginia Post of Duty. My previous assignments within DEA have included the Manila, Philippines Country Office as the Assistant Country Attaché from 2014 to 2017, Atlanta Field Division, Rome, Georgia Post of Duty from 2006 until 2014, the San Juan, Puerto Rico Division Office from 2002 until 2006 and the Portland, Oregon District Office from 1998 until 2002. Prior to becoming a Special Agent with

the DEA, I was employed by the City of Newport News, Virginia as a Police Officer and Park Ranger.

3.      During my tenure as a DEA Special Agent, I have investigated and participated in investigations of organized criminal groups violating federal drug trafficking laws. As part of my official duties, I have utilized most traditional law enforcement techniques, including visual surveillance, interviewing of witnesses, the execution of search warrants, the use of cooperating witnesses, the seizure of drug evidence, the controlled purchases of drug evidence, court authorized pen registers, court authorized interceptions of wire communications, the federal grand jury, and undercover techniques. I have debriefed numerous cooperating defendants and confidential informants regarding the habits, practices, methods, and general behavior of criminal groups engaged in organized criminal activity. I have personally participated in and directed Title III wire intercept investigations, including investigations involving large scale drug trafficking organizations and importers of controlled substances.

4.      I have received specialized training in conducting drug investigations and have attended numerous conferences and lectures featuring government attorneys and law enforcement officials. Over the course of my career, I have participated in numerous arrests of known drug traffickers and their associates. This experience has afforded me an opportunity to observe and investigate methods, schemes, and operations used by organized groups, including the use of cellular telephones and of digital display paging devices, and their use of numerical codes and code words to conduct their transactions. In addition, I have participated in investigations concerning the concealment of proceeds of controlled substances, including assets, monies, and bank records, and the identification of co-conspirators through the use of drug ledgers, telephone toll records, telephone bills, photographs, and financial records often saved for

long periods on digital devices like personal computers.  These investigations have resulted in the arrest of individuals who have imported, smuggled, received, and/or distributed controlled substances, including methamphetamine, cocaine, marijuana, and diverted pharmaceuticals such as oxycodone, as well as the seizure of controlled substances and the proceeds of the sale of these controlled substances. I know that high grade methamphetamine is currently often purchased by Southwest Virginia drug traffickers from distributors in Georgia, North Carolina and elsewhere for between $6000 and $10,000 per kilogram depending on the quality, quantity, and origin of the drug and the source of supply.

5.      The statements contained in this affidavit are based in part on information provided by officers, agents or deputies from the Smyth County Virginia Sheriff's Office (SCSO) and the Marion, Virginia Police Department (MPD) along with statements made by Cooperating Witnesses (CW).  The SCSO and the DEA have been conducting an investigation into a methamphetamine trafficking conspiracy operating in the Western District of Virginia. This affidavit contains information necessary to support a complaint relating to the forfeiture of $7500.00 U.S. Currency ("THE SUBJECT PROPERTY") seized from Teresa Gail BICKLEY in Marion, Smyth County, Virginia on April 15, 2019 that was proceeds of illegal activities in violation of 21 U.S.C. §§ 841 and 846.

6.      As set forth in detail below, THE SUBJECT PROPERTY is forfeitable under Title 21 U.S.C. §§ 841(a)(1) and 846, resulting from unlawful acts and conspiracy to distribute a controlled substance under Title 21 U.S.C. § 881(a)(6) as a thing of value constituting proceeds, facilitating property, or property furnished or intended to be furnished in exchange for a controlled substance.

## SUMMARY OF THE INVESTIGATION

7.     As part of my current assignment, I have been participating in an investigation into the trafficking of methamphetamine by several individuals in southwestern Virginia and northern North Carolina, including individuals not yet known or not fully identified ("TARGET SUBJECTS"). As described in greater detail below, the investigation has revealed that the Target Subjects were participating in a conspiracy to distribute and possess with intent to distribute methamphetamine (a Schedule II controlled substance) in violation of Title 21 U.S.C. § 841(a)(1), possession with intent to distribute and distribution of controlled substances, and Title 21 U.S.C. § 846, conspiracy to commit such offenses. During the investigation THE SUBJECT PROPERTY was seized from BICKLEY as proceeds of illegal drug trafficking. It was discovered that BICKLEY had traveled in interstate commerce for the purpose of obtaining and distributing methamphetamine in the Western District of Virginia and had previously obtained marijuana for redistribution outside of the Western District of Virginia.

## THE INVESTIGATION

8.     On April 15, 2019, SCSO Deputy Daniel Hamm performed a traffic stop on East Main Street Marion, Virginia on a 2004 Chevrolet Silverado registered to and operated by Thomas Howard PRICE (also known as HARDY P, also known as HARDY). Deputy Hamm knew PRICE had an outstanding warrant for petit larceny and he was in route to PRICE's residence to execute that warrant. Deputy Hamm confirmed PRICE's identity and arrested him. Deputy Hamm identified the passenger in the truck as Teresa Gail BICKLEY. No other parties were present in the truck. According to Deputy Hamm, he had received previous information on April 10, 2019 that BICKLEY had been transporting large amounts of methamphetamine from Texas to Marion, Virginia for resale. The source of the information further stated that he had

observed BICKLEY and PRICE at the residence of Dale ATWELL attempting to sell ATWELL one quarter to one half pound of methamphetamine. (Your Affiant is familiar with ATWELL and was aware that the Smyth County Sheriff's Office has an open investigation on ATWELL for the distribution of methamphetamine and has made purchases of methamphetamine from ATWELL through the use of a confidential informant.) Deputy Hamm obtained consent to search the truck from PRICE. HAMM informed BICKLEY he had consent to search the truck and asked her if she would consent to a search of her person and her personal items, including her purse. BICKLEY consented. Deputy Hamm asked BICKLEY if she was in possession of anything illegal or large amounts of cash and she responded that she had a large amount of cash. BICKLEY stated that she had the cash in order to bail PRICE out of jail as they were on the way to turn him in. She stated she was also out of jail having just paid $2000 cash bond for petit larceny.

9.     Deputy Hamm conducted a search of the truck and BICKLEY and discovered she had $7500 in cash located in her purse. The cash was mixed currency in fifteen stacks of $500 each. Each stack was banded with a rubber band in a manner consistent with narcotics proceeds observed and/or seized in prior investigations in which your Affiant has participated. BICKLEY claimed that the cash was the proceeds of a personal injury law suit she had recently settled in Gregg County, Texas in which she sued an Aldi Grocery Store. BICKLEY claimed to have won $55,000 and received $21,900 in cash as her share.

10.    Following the search of the truck, Deputy Hamm deployed his K-9 "Gary" who alerted positively to the presence of narcotics in the vehicle although none were discovered.

11.    Subsequent to learning about the traffic stop, your affiant learned from Virginia State Police Special Agent Billy Keene, his office had received a complaint of heavy traffic and

suspected drug activity at the residence of Howard PRICE at 256 Willow Springs Road, Marion, Virginia in the past weeks.

12.     Detective Carol Smith arrived at the scene and, following a consultation with your Affiant, seized the currency and transported it to the Smyth County Sheriff's Office where Sgt. Landon Smith deployed his drug sniffing canine "Luna" to conduct a parcel sniff on the package that contained the currency. Canine Luna alerted to the presence of narcotics on the cash.

13.     During an interview of PRICE by Deputies at the scene, he stated that he had only recently met BICKLEY and "hardly knew her." In a follow up interview with BICKLEY, she advised your Affiant that she was engaged to PRICE though, admittedly, only had spent a small amount of time with him after meeting him on Facebook. Your Affiant concluded that PRICE felt it necessary to distance himself from BICKLEY for some reason at the scene of the search. During the same interview, BICKLEY further claimed the cash was the proceeds of the aforementioned lawsuit. She explained she was represented by a personal injury lawyer from Houston and the suit was settled out of court and although she did not know the jurisdiction the suit was filed, the accident happened in Gregg County, Texas. She stated she received a cashier's check which she immediately cashed. She then put a portion of the funds in her bank. BICKLEY denied any involvement in drugs or drug trafficking but admitted to her prior convictions for cocaine possession many years before. She told SA Mueller she was in possession of the money because she was on vacation to visit family in Western Virginia. BICKLEY stated that she had a car accident in Bristol, Virginia and would be unable to get her car fixed or depart the area because the $7500 was all the money she had left from the settlement. BICKLEY explained that she was not currently employed.

14. Your Affiant was able to confirm that BICKLEY had, in fact received a payment of $20,976 in the personal injury case in an out of court settlement. I confirmed that Currency Transaction Reports were completed in BICKLEY's name for two transactions. The first on February 28, 2019 for receiving $20,976 and the second on March 1, 2019 for depositing $15,890 into her personal account and purchasing two cashier's checks.

15. Following the interview, your Affiant conducted a check of Bristol, Virginia Police Department records and discovered that on April 13, 2019, BICKLEY was fleeing in her 2004 Chevrolet Blazer from the Bristol, Virginia Walmart following a shoplifting incident, her vehicle overturned during the flight and BICKLEY attempted to flee on foot but was captured by police. The passenger, who was identified as PRICE, was ejected from the vehicle during the accident and taken to the hospital after being discovered by police hiding in a creek. BICKLEY was booked into the Southwest Virginia Regional Jail. Although jail personnel have no record of BICKLEY being in possession of any currency at the time she was booked, according to Washington County, Virginia Sheriff's Office Deputy Chris Brady, BICKLEY was in possession of just over $2000 in cash at the time of her arrest. The money was banded in bank band. Deputy Brady placed that money in BICKLEY's purse. It was this money that BICKLEY apparently used to bond herself from the jail. During the ensuing investigation at the scene, BICKLEY claimed to Deputy Brady that she did not know PRICE and he was trying to steal her cash. Similarly, PRICE denied knowing BICKLEY. Later, in an email statement to your Affiant, BICKLEY admitted to lying to the investigators and admitted to committing the offense of shoplifting even though she had the cash to pay for the items stolen. Your Affiant concluded that the cash in BICKLEY's possession was likely not hers to spend for personal property and only spent by BICKLEY when it became necessary due to her arrest. (Much later, BICKLEY told

investigators she was going to join with others to purchase a large amount of methamphetamine from a source in North Carolina which supports this theory.)

16.     On April 24, 2019, your Affiant received the following email from BICKLEY regarding the seizure of THE SUBJECT PROPERTY:

"Hi again Mr. Mueller. This is Teresa Bickley in Marion Virginia.

After speaking with you this morning, I got to thinking, and I have to be totally honest with you! No sense in lying to you.

I have been here in Marion for well over a month now. My mom didn't even know I was here this entire time. I didn't want to explain to her about Howard and I and my staying with him; (Sleeping with him). At least until I was sure it would work between he and I. Also, that the feelings we have are and were genuine.

This is how Howard and I are currently engaged and am spending time with my boyfriend & now fiancé. My mom thinks that I've been here for a week or so. I just didn't want to get into the long drawn out conversation with her about me and my boyfriend and not knowing him very well at that time. I lied to her about going home. Actuality, as I said, I have been here well over a month.

I haven't been going back-and-forth to Texas as much as I've let on to my mother, family and a couple of friends from school. I've been here for many weeks.

I guess the reason I lied to you, was because of the story I gave on the shoplifting charge and the officers in Marion. I told the officers on the shoplifting case that I had just gotten here that day; I was trying to avoid going to jail. It was a stupid thing to steal (especially with the funds I had available)!! It was even more stupid to lie about how long I've been

here. Really, I just didn't want my family & friends in my business as far as me and Howard and our relationship.

I came up here before and after I got my settlement check. I went home got some things in order there with my job and son and took care of things there.

I've been up here a few times total about 3 or 4 for a week or even just a long weekend to get to know and spend time with Howard. That was with money from my job and with an advance on my lawsuit before I received the large check.

I have been on a leave of absence from my job since I received my settlement check. That's the 1st week of March. I did get an advance from my attorney on the lawsuit as well to come see Howard and my family in February twice.

I knew I was getting the check so I wasn't really worried about money. Work was going slow and they weren't paying me on time or full paycheck amount at one time. I had access to money so I didn't want to work right at that time.

Howard and I have really focused on our relationship and spending time together, getting to know each other because we hit it off really well had great chemistry, also it was something that we both wanted to pursue.

Then my relationship with Howard started getting really serious. So I came back to Marion for extended stay and recently started the process to relocate here with him. He and I have developed a serious relationship because I've been here with him for a few days on visits and recently now for several weeks.

My son has deposited money into my checking account on a couple of occasions. That's because I pay the rent online via an app, and he's living there also. He's an adult and he helps out with the bills. He has a job at RPM in Longview. That RPM stands for rapid

preventative maintenance. He does on location lube, oil & filter changes for oilfield service companies.

I do not take drugs and do not use them in any way!! Not any drugs of any type except prescriptions from my doctor.

For the Smyth County Sheriff department to assume that of me just because I had a lot of cash or because I had money on me is just plain wrong.

I have been in some serious trouble in my past. I am not trying to go back down that road....I'm trying to live a good life with a good man! And believe me I learned a valuable lesson on that shoplifting crap!

I really counted on that money I had with me to survive on, while I'm here. And was going to go pay the towing and storage fees for my car, pay for my reckless driving ticket. That day, Howard and I were going by my mothers house then we were going to the regional facility in Abington for a warrant on the shoplifting. I wanted to bail him out immediately. I Had no clue how much all that would be. That's why I had all the money that I had left, that I brought here with me, at that time.

The remainder of the money I had was to last me until I decide to go get all my belongings and relocate here permanently and marry Howard.

I've left my job if or until further notice. All my money I had was to last about one year. Or at least that's what I had planned on doing. Now since I don't have access to half of what I had left, and had to get another vehicle, I'm not sure what I'll do.

Yes, I understand I lied to the officers previously about how long I have been here. I swear this letter, is the whole entire and complete truth. Even my mother does not know the details as you now do.

Thank you for your time and for understanding the situation and circumstances.

Sincerely,

Teresa Bickley"

17.    On April 26, 2019, your Affiant conferred with DEA Task Force Officer (TFO) TFO L. Scott Prater. He reported that on February 15, 2019, he observed a pickup truck registered to Thomas Howard PRICE at the residence of ATWELL. On the same date, TFO Prater received a text message from Mike Carter, the commander of the Claytor Lake, Virginia Drug Task Force. Commander Carter advised he had received information that PRICE was "selling pretty heavy" from his residence and likely a formidable future target for illicit narcotics investigation.

18.    Also on April 26, 2019, BICKLEY voluntarily provided bank statements and other records pertaining to the personal injury claim to DEA in an attempt to support her statement that THE SUBJECT PROPERTY was derived from the settlement of the personal injury claim.  She subsequently provided me with bank statements from her Texas bank as well as the Bank of Marion where she had just opened an account.

19.    During the two telephone conversations your Affiant had with BICKLEY, she attempted to provide an explanation of her net worth. Based on her explanation of her income verses expenditures that included the purchase of two vehicles and the replacement of an engine in one of those vehicles, as well as frequent travel between Virginia and Texas, payment for rent, coupled with an examination of the records BICKLEY provided, showing the amount of money that remained in BICKLEY's Bank of Marion account, your Affiant was unable to account for the origin of THE SUBJECT PROPERTY. In fact, the total net worth as described by

BICKLEY, appeared well in excess of the money BICKLEY had received in the personal injury settlement. BICKLEY had stated she was making $12 per hour working as an administrative assistant at GBC MPC Inc, a Longview, Texas exterminator but began a leave of absence in the first week of March because she had won so much money. BICKLEY stated GBC MPC was not able to pay its employees full pay checks and she had only been receiving partial paychecks. Your affiant also discovered that BICKLEY had taken a vacation in Myrtle Beach, South Carolina.

20.     SA Mueller checked BICKLEY's computerized criminal history. SA Mueller discovered BICKLEY had spent several years in prison for robbery. Additionally, BICKLEY had been charged with manufacture and delivery of a controlled substance in 2005 and convicted of cocaine possession in 1990.

21.     On May 19, 2019, members of the Smyth County, Virginia Sheriff's Office received information from a CW regarding the trafficking of methamphetamine by BICKLEY. According to the CW, BICKLEY was expected to return from North Carolina with as much as five pounds of methamphetamine operating a silver Chevrolet Trail Blazer. BICKLEY's destination was Walker Creek Road in Smyth County. Deputies were able to develop information through sheriff's office dispatch records and citizen "tips" that the Chevrolet Trail Blazer had been frequenting Brockwell Lane at the residence of Jodi Lynn CLEARY. The Deputies began surveilling the area and at 11:05PM observed the vehicle and a traffic stop was initiated after the vehicle as observed crossing a double yellow lane marking. The operator of the vehicle was discovered to be BICKLEY.

22.     As Deputy Z. King was writing two Virginia Uniform Summons for BICKLEY, Marion, Virginia Police Officer J. Horn, who had arrived on the scene earlier, deployed his drug

sniffing canine to conduct a free air search around the vehicle. Upon completion of the canine deployment, Officer J. Horn reported to Deputy King that the canine had alerted positively to the scent of drugs in or on the vehicle.

23.     Based on the canine alert and previous information provided by the CW, Deputies conducted a search of the vehicle and discovered three clear plastic bags containing an opaque crystal substance consistent of the appearance of methamphetamine weighing approximately 515 gross grams. The methamphetamine was behind the driver's seat in a department store shopping bag, three bundles of U.S. Currency and loose currency in the amount of $4,003.00, digital scales, packaging material, glass smoking devices and a prescription bottle containing a green leafy substance that field tested positive for the presence of marijuana. A field test of a small piece of the opaque substance gave a positive indication for the presence of methamphetamine. BICKLEY was advised of her rights under Miranda and agreed to speak to the investigators. She stated she did not know the drugs were in the vehicle. She referred to the methamphetamine as "dope" and admitted to using methamphetamine.

24.     BICKLEY was arrested at the scene and transported to the Smyth County, Virginia Sheriff's Office where she was further interviewed by Detective Sergeant Carol Smith. According to Detective Smith, BICKLEY admitted to travelling to Cherokee, North Carolina for the purpose of negotiating with a male subject she only knew as "Dude" for the purchase of pounds of methamphetamine for transportation to and resale in Virginia. BICKLEY claimed that she was not aware the drugs had been placed in her vehicle and she believed it was possible the "Dude" placed the drugs in her car without her knowledge. BICKLEY claimed that Clint COOPER had established the contact between her and "Dude." BICKLEY stated that there had been a pool of money in partnership with others in order to purchase a large quantity of

methamphetamine. At the end of the interview, Detective Smith showed BICKLEY a picture of Cutler GLENN and asked her if the picture was of "Dude." According to Detective Smith, BICKLEY appeared shook and shook her head up and down and asked Detective Smith, "How do you know that?"

25. Following BICKLEY's arrested, a search warrant was executed on CLEARY's residence at 1515 Brockwell Lane, Smyth County, Virginia. Discovered during the search of the residence was a retail box for the scales discovered in BICKLEY's vehicle, two safes (one containing $1200 in U.S. Currency and two grams of suspected methamphetamine.

26. Upon the completion of the search, CLEARY consented to an interview at the Smyth County Sheriff's Office. Your Affiant and Detective Smith conducted the interview. You Affiant advised CLEARY of her rights from a DEA Rights Waiver Form and she acknowledged she understood her rights and would speak with the investigators. In summary, CLEARY stated that she had met BICKLEY around March 16, 2019. At the time of the meeting she was unaware that BICKLEY was involved in the distribution of methamphetamine. CLEARY later learned that BICKLEY had been traveling to Georgia and North Carolina to pick up methamphetamine and bring it back to Virginia for resale. CLEARY began redistributing methamphetamine for BICKLEY. CLEARY stated she learned that PRICE had traveled with BICKLEY on at least one occasion to pick up methamphetamine in Georgia. CLEARY stated that she traveled with BICKLEY to Asheville, North Carolina on one occasion where they met a male in a blue Ford Explorer. They met the male at a restaurant parking lot. CLEARY observed BICKLEY get into the Explorer with the male carrying a car battery charger. CLEARY later discovered that the battery charger was hollow. CLEARY did not know how much methamphetamine BICKLEY may have obtained. CLEARY stated BICKLEY gave her $100 for riding with her to Asheville.

CLEARY was shown a picture of Clinton COOPER and identified him as the driver of the Explorer. CLEARY stated she knew that BICKLEY had traveled to Asheville, North Carolina at least four times to obtain methamphetamine and had observed BICKLEY cutting and packaging the methamphetamine. CLEARY stated that she knew that BICKLEY had obtained as much as one kilogram of methamphetamine on a trip. CLEARY stated she knew that BICKLEY was going to North Carolina to pick up methamphetamine the previous day.

27.     On September 11, 2019, your Affiant executed a Virginia State search warrant issued to Detective Smith by a Virginia State Magistrate Judge for the search of the contents of BICKLEY's iPhone seized at the time of her arrest. During the search of the phone utilizing specialized forensic equipment I discovered the following Short Message Service (SMS) Messages, Multi Media Service (MMS) Messages (also often referred to simply as text messages) and voicemail messages in the memory of the iPhone:

**July 17, 2018**

BICKLEY to Joseph FENTON: "It's called critical mass" Attached to the iMessage was an image taken with a Verizon camera application of six large Mason style jars containing a green substance consistent in a appearance with marijuana.

BICKLEY to FENTON: A photograph taken with a Verizon camera application of large buds consistent in appearance with marijuana package in a Ziploc style bag.

BICKLEY to FENTON: A screen shot reading "Here are some images of 'marijuana that's called critical mass' I found on the web:" The screen shot depicts six picture of plants consistent in appearance with marijuana.

BICKLEY to FENTON: "Delete these photos from our conversation"

**July 18, 2018**

BICKLEY to FENTON: "Hey did y'all want that?"

**August 30, 2018**

BICKLEY to NANCY LNU: Hey I got s hold to some bas ass W...medial shit out came straight out of Oregon state. These young ass cool as hell white boys just came back yesterday.

BICKLEY: "Do you still need a quarter of a half?"

NANCY LNU: "No"

BICKLEY: "Okay. If you're home in a while I may stop by and smoke this new stuff w/you."

**September 4, 2018**

BICKLEY to NANCY LNU: "One of those youngsters went to Colorado again and came back with some Pineapple Express w"

NANCY LNU: I don't have the fnds, wish I could, if t comes by at lunch I'll see if he wants some. U get some? Come smoke if u want, it's just me, Matt.

Your Affiant understood the preceding messages as BICKLEY attempting to deliver and sell marijuana to FENTON and NANCY LNU in 2018.

**February 19, 2019**

BICKLEY to FENTON: Call Robert and tell him.... For real for real....get w his people and see if they can get a kilo for $5,500.00. We have a couple heavy hitters here that will split it and get 1.1 lbs each.

**March 28, 2019**

BICKLEY to HARDY (PRICE): Look I don't know what you're going through but You were tripping the fuck out you know I'm block me on Facebook and shit really? I was

gone I left to go pick up the stuff. My phone may have been signed in but I was not I was

driving through a fucking cop infested area worrying about fucking going to prison not

goddamn Facebook you idiot. I'm down here running a goddamn rat race to get

everything done so I can hurry up and get back to you taking care your motherfucking

business instead of relaxing and taking my time  I'm too busy living your life ripping and

running up and down the goddamn road driving myself crazy stressing the fuck out

jumping through hoops to make shit happen and you don't appreciate a Damn thing man

fuck you I'm not even coming back I'm over it I'm done

Look I don't know what you're going through but You were tripping the fuck out you

know I'm block me on Facebook and shit really?

**April 8, 2019**

BICKLEY to CLEARY: "Dale never came for his sack. Sill got one left…tying to go

reup! Know any one who might want this last one???" (You affiant knows that "sack" is

a common way to refer to a bag of methamphetamine.)

**April 9, 2019**

Three photographs were discovered taken on I-26 in North Carolina with the user of the

telephone traveling south towards Asheville, North Carolina at 2:58PM. Meta data

embedded with the photographs provided Global Positioning System (GPS) data

consistent with the images in an area of I-26 known by your Affiant.

**April 10, 2019**

BICKLEY: "Man oh man you have to try this new package…It has legs for days and

days!!! I'm talking energizer bunny on steroids, type shit."

CLEARY: "Hee hee…. I b needin a zipper when I get off today. See ya round 630 7ish. Cool?" (Your affiant knowns that the term "zipper" is street vernacular for one ounce of methamphetamine.)

BICKLEY: "Tehee ha ha you're gonna love it this is good shit is got me heated the fuck up I hadn't had that shit this good in a long time anyway that's fines girl friend at you know what it is words it so I'll see you then"

CLEARY: "Still five and a half clams to indulge?"

BICKLEY: "This is 6 clams because it was 2 grand more costly for me. But best believe it's worth it." (Your Affiant concluded that CLEARY wanted to pay $550 for one ounce of methamphetamine but due to the increase in cost by $2000, BICKLEY was raising the price of the methamphetamine (Based on the messages and recovered photographs from April 8 through April 10, it is clear to your Affiant that BICKLEY traveled out of state to obtain a large amount of methamphetamine for resale and returned with an amount that cost her more than on previous trips.)

**May 3, 2019**

BICKLEY to HARDY (PRICE): "2767818235. This is my Number at jodi's. My regular phone does not have any signal at all out there. I called you several times and and left you messages both on your regular phone and on  faceboook messenger. Im in love with yiou and I can't even breathe without you DADDY!!!!  Thhe only reason i slept at all is because i was totally exhausted. Babe i need you and i am miserable without you! There are still 45 incitements to serve....thete were 2+ some already incarcerated on other charges and then they served/arrested 22 othets yesterday.  The "ice storm" investigation, as they called it, has been going on for 8 months.  Babe im really scared to death to be at

home until this is all over with. I cannot go back to prison!!!!! Id act like i was pulling a gun on them so they would shoot & kill me! Thats how serious i am. Please call me or come out to jodi's. She is totally ok with you being thete w/ me. And it is safer than you being at the house. I know the kids will be okay"

**May 4, 2019**

COOPER to BICKLEY: "Our current location" Attached to the message were GPS coordinates that resolved to the rear parking lot of the IHOP restaurant located at 245 Tunnel Road, Asheville, North Carolina.

May 8, 2019

BICKLEY to FENTON: I'm trying to get business back up. It's going okay again. Had to start w/ a small front but, so far so good. I'll be renting a house here pretty soon by June I should be able to do that. Very small customer base….I only have 3 customers and then my friend Jodi, she has her few customers….

**May 18, 2019**

BICKLEY to COOPER: "Hey you guys ok. I need to see ya tomorrow" (Your Affiant believes that this message is an attempt by BICKLEY to establish a meeting for the purchase of methamphetamine from COOPER. This occurred just a day before BICKLEY's arrest in possession of approximately one half kilogram of methamphetamine.)

**May 18, 2019:**

Voicemail from CLEARY: "Hey, my people are coming all the way up with it, so I ordered you one, you're good. Bye."

## CONCLUSION

28. Based on your Affiant's knowledge of the investigation, the review of bank records, the examination of evidence seized from BICKLEY and CLEARY, and debriefings of witnesses mentioned in this affidavit, your affiant believes that THE SUBJECT PROPERTY is from the distribution of narcotics, particularly those obtained on April 9, 2019, and was intended to be used for further purchases of narcotics. Your Affiant has concluded that there is evidence that BICKLEY has distributed marijuana since July 2018 and subsequently began distributing methamphetamine in March 2019 contradicting her assertion to me on April 24, 2019 that she was in no way involved in illicit drugs. Your affiant submits that there is probable cause to believe that THE SUBJECT PROPERTY is forfeitable under 21 U.S.C. § 881(a)(6) as currency and other things of value constituting proceeds, facilitating property, or property furnished or intended to be furnished in exchange for a controlled substance.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ⟋⟋⟋ day of September 2019.

CHRISTOPHER A. MUELLER
Special Agent
Drug Enforcement Administration